**Major Walter D. CUNNINGHAM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–499C.

United States Court of Federal Claims.

Jan. 12, 1998.

after the claims were submitted. They are thus deemed denied by the CO. *See* 41 U.S.C. § 605(c)(5).

Charles W. Gittins, Alexandria, VA, for plaintiff.

Armando O. Bonilla, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Col. Dan M. Lizzul, United States Marine Corps, of counsel.

### *ORDER*

MILLER, Judge.

This military pay case is before the court after argument on defendant's motion to dismiss and cross–motions for summary judgment on the administrative record. Plaintiff challenges the decision of a correction board denying his application to correct his records by removing an officer fitness report and expunging his non–selections for promotion, which were based on records containing improperly completed fitness reports. The board also rejected his request to recommend his consideration for promotion by a special selection board. Defendant maintains that plaintiff's claim is not justiciable and asks alternatively that the BCNR's decision be upheld.

### FACTS

The following facts derive from the administrative record. On May 6, 1977, after successfully completing the Naval Reserve Officer Training Corps Program, Major [1] Walter

---

1. For the sake of clarity, plaintiff's rank is re-   ferred to as Major, his rank from September 1,

D. Cunningham ("plaintiff") was appointed to second lieutenant in the United States Marine Corps. On June 8, 1979, plaintiff was promoted to first lieutenant. On October 27, 1980, plaintiff was evaluated with an academic fitness report, for the period July 26, 1980, through October 27, 1980, reflecting that plaintiff ranked 45 in his class of 99 and that his final overall grade was 50.17%. On July 1, 1982, plaintiff was promoted to captain.

On May 31, 1983, plaintiff was evaluated by his reporting senior, Major S.A. Poling, Marine Corps Squadron Executive Officer. This officer fitness report for the period July 6, 1983, through September 1983, consisted of both personal and professional evaluations and ranked plaintiff last among five captains evaluated by Major Poling. On September 12, 1983, while serving as a Flight Officer at Marine Fighter Attack Squadron–122, plaintiff received a transfer fitness report drafted by his reporting senior, Major Richard D. Steams, for the period July 6, 1983, through September 12, 1983. This fitness report consisted of both personal and professional evaluations and ranked plaintiff among the bottom two of the three captains evaluated by Major Stearns.

On September 1, 1989, plaintiff was promoted to the rank of Major. Plaintiff was considered, but not selected, for a promotion to the grade of lieutenant colonel by the Fiscal Year 1996 Marine Corps Lieutenant Colonel Promotion Selection Board ("FY 1996 selection board"). Following his non–selection, on August 20, 1995, plaintiff filed an application with the Board for Correction of Naval Records (the "BCNR") requesting

1) removal of the October 27, 1980, May 31, 1983, and September 12, 1983 fitness reports from his military personnel file; 2) expungement from his file of the promotion passover by the FY 1996 selection board; and 3) consideration for promotion to the grade of lieutenant colonel by the next scheduled promotion board. For each of the three challenged fitness reports, plaintiff cited several procedural defects rendering the fitness reports not completed in accordance with Naval regulations, so that they should not have been considered by the FY 1996 selection board.[2] In sum, plaintiff asserted that he was prejudiced by the failure of the selection board to consider "a complete and substantively accurate" official military personnel file ("OMPF").

By memorandum dated February 15, 1996, the Marine Corps Performance Evaluation Review Board (the "PERB") determined that the removal of plaintiff's October 27, 1980 and September 12, 1983 fitness reports "is warranted and has been directed." The PERB gave no other explanation. However, the PERB determined that the May 31, 1983 fitness report should be retained, concluding that it was "administratively correct and procedurally complete as written and filed" and not adverse. Furthermore, the PERB found that by signing the fitness report, plaintiff acknowledged its accuracy, including the Reporting Senior of Record[3] and noted that to raise the issue of accuracy "more than 12 years after the fact lacks timeliness, credibility, and documentation."

The Officer Career Planning, Counseling, and Evaluation Section, Officer Assignment Branch (the "MMOA–4") issued an advisory

---

1989, until his retirement on May 31, 1997.

2. Plaintiff asserted that 1) both the May 31 and September 12, 1983 fitness reports should have been considered "adverse" and thus should have been forwarded to him for his rebuttal in accordance with Naval Regulation art. 1110 (1973), and MCO P1610.7C (Dec. 16, 1985); 2) a change of reporting senior should have been completed for his May 31, 1983 fitness report in accordance with MCO P1610.7B (Feb. 23,1977); 3) the October 29, 1980 fitness report had not been referred to him for his signature and opportunity to comment, in violation of Naval Regulation art. 1110; and 4) the "below average" rating in the October 29, 1980 fitness report was inaccurate.

3. MCO P1670.11 (Mar. 18, 1981), governs the appeal of fitness reports and states:

> [S]ubstantive appeals based on alleged administrative errors in sections A and D of the fitness reports will not be accepted unless accompanied by a specific explanation of why such an appeal should be considered after the evaluated Marine previously certified the information as accurate.

The PERB found that "[t]he question of whether or not Major Poling was the correct Reporting Senior is neither documented nor substantiated."

opinion dated February 13, 1996, finding that the removal of the two contested reports did "not add sufficient strength to make his record competitive with selected contemporaries" and thus recommending that plaintiff's BCNR application be denied. The memorandum opined that additional areas of competitive concern—aside from the three contested reports—"may have contributed to his failure of selection." For example, plaintiff's OMPF reflected a trend of Section "B" marks, indicating a decline in performance to "less-than-outstanding" in certain areas. In addition, although plaintiff was competitive relative to his contemporaries regarding career value and distribution, his rankings as major were not. Eight officers were ranked above plaintiff and six officers were ranked below him.[4]

On June 30, 1996, plaintiff submitted a final application for correction of his records in which he asserted that his May 31, 1983 fitness report was issued by the wrong reporting senior in violation of MCO P1610.7B (Feb. 23, 1977), and sought reconsideration of his non–selections for promotion. During the pendency of plaintiff's BCNR application, he was denied promotion by the FY 1997 Lieutenant Colonel Promotion Selection Board. The fitness reports were not removed until over two months after consideration by the selection board.

On July 11, 1996, the BCNR considered plaintiff's application for further relief. By letter dated August 6, 1996, the BCNR "found that the evidence submitted was insufficient to establish the existence of probable material error or injustice." Finding an insufficient basis to expunge either failure of promotion, the BCNR declined to recommend a special selection board.

On July 10, 1996, plaintiff sent a supplemental response to the BCNR claiming that the PERB had granted relief in a similar case involving a delayed challenge to a fitness report prepared by the wrong reporting senior. By letter dated October 23, 1996, the BCNR treated plaintiff's July 10, 1996 response as a motion for reconsideration. The

BCNR concluded that the cited decision was distinguishable from plaintiff's in that the decision was based upon "retribution and retaliation," issues that plaintiff failed to raise. Therefore, the BCNR denied plaintiff's request for reconsideration.

Having twice failed promotion, on May 31, 1997, plaintiff was retired mandatorily from active duty service at the rank of major, pursuant to 10 U.S.C. 632(a) (1994). He was placed upon the retired list on June 1, 1997, having served 20 years of honorable active duty service. On July 22, 1997, plaintiff commenced the instant action, challenging the BCNR decision. Plaintiff seeks, *inter alia,* an order requiring plaintiff's reinstatement to active duty, an award of back pay with interest, an order requiring the deletion of both the May 31, 1983 fitness report and failures of selection for promotion for the FY 1996 and FY 1997 selection boards, and an order requiring that plaintiff be considered by a special selection board for promotion to lieutenant colonel.

## DISCUSSION

### 1. *Justiciability*

Pursuant to 10 U.S.C. § 1552(a)(1) (1994), "[t]he Secretary of a military department may correct any military record ... when the Secretary considers it necessary to correct an error or remove an injustice." The Secretary has the authority to act through a civilian correction board, here the BCNR.

■ It is well settled that when reviewing a BCNR decision, the court must show a high degree of deference. *Murphy v. United States,* 993 F.2d 871, 872–74 (Fed.Cir.1993); *Voge v. United States,* 844 F.2d 776, 779–80 (Fed.Cir.1988) ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense."). Because "[o]rderly government requires that the judiciary be ... scrupulous not to interfere with legitimate Army matters," *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), "[j]usticiability is a particularly apt inquiry when one seeks review of

---

4.· During oral argument defendant demonstrated how adding the rankings from each fitness report produced an overall ranking of eight officers above plaintiff and six below him. Otherwise known as the "Truth–Teller" ranking, each fitness report ranks all officers against each other.

military activities." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995) (quoting *Murphy,* 993 F.2d at 872). Yet only procedural matters involved in military promotion decisions are justiciable; the merits of the decision are not. *Id.* at 1323.

Defendant nonetheless contends that plaintiff's complaint raises numerous nonjusticiable issues, so that the action should be dismissed pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. Plaintiff's complaint challenges the BCNR's decision to deny his application as arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law or regulation. Defendant attempts to parse plaintiff's claim into only one justiciable and several nonjusticiable issues. According to defendant, plaintiff quarrels with the substantive merits of several aspects of the BCNR's decision,[5] as well as the ultimate non–selection decisions by the FY 1996 and FY 1997 selection boards, which defendant insists are nonjusticiable issues. The "sole" justiciable issue, defendant argues, is whether the BCNR's denial of plaintiff's application was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Defendant's approach is unpersuasive, however, because the gravamen of plaintiff's complaint is that, due to the presence of legal error, "the selection boards failed to consider him, as required by statute and regulations, on 'a fair and substantially accurate and complete portrayal' of his career." *Womack v. United States,* 34 Fed.Cl. 755, 761 (1996) (quoting Marine Corps Promotion Manual, v. 1, § 1, subch. 2105, ¶ 1b). As such, plaintiff's claim is justiciable. *Id.* (citing *Voge,* 844 F.2d at 779); *Skinner v. United States,* 219 Ct.Cl. 322, 332–33, 594 F.2d 824, 829 (1979) (noting that court has jurisdiction to review correction board actions that allegedly violate statute, regulation, or published mandatory procedure); *see also Engels v. United States,* 230 Ct.Cl. 465–72, 678 F.2d 173, 177 (1982); *Sanders v. United States,* 219 Ct.Cl. 285, 302,

594 F.2d 804, 814 (1979) (*en banc*). Defendant's motion to dismiss is denied.

### 2. *Standards for review of the BCNR's decision*

Plaintiff must first overcome "the strong, but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813 (citations omitted). The presumption may be rebutted by a showing that the BCNR's decision was "illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811; *see also Skinner,* 219 Ct.Cl. at 332, 594 F.2d at 830 (noting that this standard is "ordinarily the rule," yet distinguishing between selection and correction boards).

It is well established that an officer seeking a correction of his record need not prove that "but for" the errors, the non–selection would not have occurred, *i.e.,* he would or probably would have been promoted. *Dodson v. United States,* 988 F.2d 1199, 1205 (Fed.Cir.1993); *Skinner,* 219 Ct.Cl. at 334, 594 F.2d at 831; *Sanders,* 219 Ct.Cl. at 306–07, 594 F.2d at 817. Rather, plaintiff must show by "cogent and clearly convincing evidence," *Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992), first, a material legal error or injustice, and second, a "causal nexus" or "substantial connection" between the error and the promotion rejection. *Engels,* 230 Ct.Cl. at 468, 678 F.2d at 175; *see also Hary v. United States,* 223 Ct.Cl. 10, 15–16, 618 F.2d 704, 707(1980) (finding that plaintiff must at least "set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action"); *Sanders,* 219 Ct.Cl. at 310–11, 594 F.2d at 818. In

---

**5.** Specifically, according to defendant, plaintiff's claim is that 1) the BCNR's determination that plaintiff's military record (with the two fitness reports removed) was insufficiently competitive to warrant special selection board consideration;

2) the BCNR's finding that the May 31, 1983 fitness report was "sufficiently specific"; and 3) the BCNR's determination that the May 31, 1983 fitness report was neither "adverse" nor "material." Def's Br. filed Sept. 22, 1997, at 20.

order to assess the nexus issue, the court must examine two "separate but interrelated" standards: "First, was the [plaintiff's] record prejudiced by the errors in the sense that the record appears worse than it would in the absence of error? Second, even if there was some such prejudice, is it unlikely that he would have been promoted in any event?" *Engels,* 230 Ct.Cl. at 470, 678 F.2d at 176. If plaintiff establishes this nexus or "substantial connection," then the end–burden of persuasion shifts to the defendant to show the "harmlessness" of the error, that is, "despite the plaintiff's prima facie case, there was no substantial nexus or connection." *Id.* at 468, 678 F.2d at 175.

Plaintiff must establish that a material error—the presence of fitness reports that were later removed—was causally related to his failure of selection by the FY 1996 and FY 1997 promotion selection boards. It is uncontested that, when presented to the selection boards, plaintiff's record contained the two fitness reports (from October 27, 1980, and September 12, 1983) that the PERB later removed on February 15, 1996. Although plaintiff insists that the PERB's removal of the two fitness reports indicates "a material error in plaintiff's Naval record," Plf's Br. filed Oct. 16, 1997, at 11, the PERB gave no explanation for the removal; it merely stated that removal was "warranted."

The MMOA–4 advisory opinion contains somewhat contradictory suggestions of prejudice. It indicated that "further jeopardy" would be removed by deleting the third contested fitness report, which contained "significant less competitive Value and Distribution, and Section B marks." While this statement does imply a certain degree of prejudice— that plaintiff's record, in fact, did appear worse with the fitness reports than without them—the advisory opinion also noted "areas of competitive concern *in addition to the three* contested reports which may have contributed to his failure of selection."[6] However, plaintiff alleges that he obtained an expert opinion from a PERB counselor that the three fitness reports could be considered ad-

verse and "likely resulted in his failure of selection." Compl. ¶¶ 7–8. Therefore, how prejudicial or harmless the fitness reports were is uncertain, as is the extent to which other areas of competitive concern played a role in plaintiff's non–selection—in essence, whether there was a "substantial nexus" between the error and the non–selection.

In some cases the reviewing court's inquiry is guided by the correction board's explanation of why it removed an erroneous fitness report from a servicemember's record. For example, in *Sanders* the Court of Claims found that "[w]hen the Correction Board removed the prejudicial [fitness reports] because it said that they were erroneous, unjust, inaccurate, and prejudicial to plaintiff's career, it was ruling, in effect that he had not been considered for promotion on the 'fair and equitable' basis mandated" by applicable statutory provisions. 219 Ct.Cl. at 311, 594 F.2d at 818. The *Sanders* court concluded that "there was no other evidence to which his nonpromotion could seemingly be attributed." *Id.* at 305, 594 F.2d at 815. In contrast, the PERB gave no indication why the two challenged fitness reports warranted removal from plaintiff's record, and the BCNR determined that, despite the removal, plaintiff's record was not sufficiently strong to be "competitive with selected contemporaries." These facts are distinguishable from those in *Sanders.*

Although the BCNR may void a fitness report, "it is not automatically obligated to void any passover emanating from a selection board that had a defective O[F]R before it. The officer must show that the presence of the defective O[F]R made his whole record before the selection board something less than 'substantially complete and fair.'" *Hary,* 223 Ct.Cl. at 20, 618 F.2d at 709 (quoting *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814). Indeed, the BCNR is charged with ensuring that a servicemember's record is accurate and that it completely and fairly portrays his or her career in the military. Such "a substantially complete and fair record is a necessary requirement [for] proper

---

6. These areas were 1) a trend of Section "B" marks; 2) plaintiff's decline in performance; and 3) plaintiff's "mid–pack" value and distribution

rankings as a major which were insufficient to make him competitive vis–a–vis contemporaries.

consideration [for promotion] by a selection board." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813–14; *see also Hary*, 223 Ct.Cl. at 19, 618 F.2d at 709 (stating that the "fundamental principle" of the nexus inquiry is whether inclusion of two erroneous fitness reports prevented the selection boards from assessing plaintiff's career on a "fair and equitable basis"); *Weiss v. United States*, 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969) (same).

Defendant argues that the reference to plaintiff's lack of competitiveness vis–a–vis selected contemporaries is "tantamount to a finding that the inclusion of the challenged fitness reports was 'harmless.'" Def's Br. filed Dec. 19, 1997, at 9. Although the MMOA–4 advisory opinion noted three additional "areas of competitive concern," it *did* not state that these areas would or would likely have contributed to (or even caused) plaintiff's failure of selection. Rather, the advisory opinion said these areas "may have contributed to his failure of selection." The word "may" is particularly problematic, as it calls into question whether the errors were "harmless." If these areas of concern "may" have contributed to plaintiff's promotion failures, it is equally possible that they also may not have so contributed. In other words, the inclusion in plaintiff's record of the two contested (and later removed) fitness reports may or may not have been "harmless" error. If the other cited "areas of competitive concern" would not alone have caused plaintiff's non–selection, then the inclusion of the fitness reports was not "harmless" error, but prejudicial.

■ Due to the ambiguity of the administrative record, defendant has failed to show the harmlessness of the error or, alternatively, the lack of a substantial nexus between the error and the two non–selections. *Engels*, 230 Ct.Cl. at 468, 678 F.2d at 175. The BCNR failed to determine whether the errors were in fact "harmless," *i.e.*, whether they played no role in either the first or second failure of promotion.[7]

Similarly, the BCNR also failed to determine whether the inclusion of the two erroneous fitness reports in plaintiff's OMPF precluded the FY 1996 and FY 1997 selection boards from considering a "substantially complete and fair record." The court cannot merely assume that the inclusion was harmless error and allowed for consideration of a fair record, especially given the PERB's admission of the prejudicial nature of the removed reports and the BCNR's admission that other areas of concern "may" have contributed to the two failures of promotion.

Both parties have failed to meet their burden for judgment on the administrative record. Defendant has failed to demonstrate the absence of a nexus between the error and the passover or that the error was harmless. Plaintiff has failed to prove that the OMPF and fitness reports contained a material error and that a substantial nexus between the error and the passovers existed. As for the BCNR's decision to retain the remaining contested May 31, 1983 fitness report, the BCNR's decision adopted the PERB's opinion and each clearly articulated its grounds, which plaintiff has failed to show were arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law or regulation. *See supra* p. 690. Plaintiff refers to an allegedly similar case involving another officer, Major O'Connor, whose fitness report was voided because his Reporting Senior was replaced and no change of Reporting Senior fitness report was prepared. On reconsideration of plaintiff's case, the BCNR distinguished Major O'Connor's case on plausible grounds. In any event, the O'Connor matter was apparently not published and thus cannot be examined or considered by the court.

Because plaintiff was eligible for promotion and was considered by a selection board, but was not selected, pursuant to 10 U.S.C. § 628(b)(1) (1994), and Department of Defense regulations, the Secretary of the Navy

---

**7.** The effect of the error is potentially cumulative. Even had the two erroneous fitness reports been removed from plaintiff's record prior to consideration of the FY 1997 selection board, the presence of the promotion passover from the FY 1996 selection board would still be detrimental. *See, e.g., Hary*, 223 Ct.Cl. at 22, 618 F.2d at 711 (noting the "inherently detrimental nature of the presence of passovers in a serviceman's record").

may convene a special selection board under this subsection ... to determine whether such officer should be recommended for promotion if the Secretary concerned determines that—

(A) the action of the board which considered the officer was contrary to law or involved material error of fact or material administrative errors; or

(B) the board did not have before it for consideration material information.

(2) A special selection board convened under paragraph (1) shall consider the record of the officer as his record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

A special selection board, however, may only be convened for officers on the active duty list. *Etheredge v. United States,* 8 Cl. Ct. 736, 741 (1985) (citing SECAVINST 1401.1 ¶ 7(a) (Jan. 6, 1982) (currently at SECAVINST ¶ 3(a)) (Apr. 25, 1997)). Thus, if a special selection board is deemed appropriate, in order for it to reconsider plaintiff, the Secretary of the Navy temporarily may recall him to active duty. 10 U.S.C. § 688; Department of Defense Directive 1352.1 ¶ F(3)(b)(1) (Mar. 2, 1990).

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is denied.

2. Defendant's motion for judgment upon the administrative record is granted only in-

sofar as the BCNR's decision declining to review the May 31, 1983 fitness report was not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law or regulation. The parties' cross–motions otherwise are denied.

3. Pursuant to RCFC 60. 1(a)(1), this case is remanded to the BCNR for a decision that shall discuss and answer each of the following questions:

a. Was the error in plaintiff's OMPF "material" or "harmless," such that plaintiff was prejudiced?

b. Did the inclusion of the two removed fitness reports in plaintiff's OMPF preclude the FY 1996 and 1997 promotion selection boards from assessing his career on a "substantially complete and fair record?"

c. Is it unlikely that plaintiff would have been selected for promotion by either selection board had the fitness reports been removed from plaintiff's file prior to the boards' consideration of plaintiff?

4. If the BCNR determines that it is not unlikely that plaintiff would have been selected for promotion, the board shall order the appropriate relief. The BCNR shall also determine whether, pursuant to 10 U.S.C. § 628(b)(1), plaintiff should be temporarily reinstated and his record referred to a duly constituted special selection board for promotion consideration.

5. The decision on remand shall be filed by May 1, 1998.