Daniel A. **LINDSAY**, Plaintiff–Appellant,

v.

**UNITED STATES**, Defendant–Appellee.

No. 02–5015.

United States Court of Appeals, Federal Circuit.

DECIDED: June 27, 2002.

William S. Aramony, Law Office of William S. Aramony, of Alexandria, Virginia, argued for plaintiff-appellant.

David D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief was Captain Ira Perkins, United States Air Force, of Arlington, Virginia.

Before CLEVENGER, BRYSON and PROST, Circuit Judges.

CLEVENGER, Circuit Judge.

Daniel Lindsay appeals the decision of the Court of Federal Claims dismissing his challenge to actions by the United States Air Force that led to his involuntary separation from service; namely, particular Officer Evaluation Reports prepared in 1986, his subsequent nonselections for promotion to Major and Lieutenant Colonel, and the refusal of the Air Force Board for Correction of Military Records to void either the contested reports or his nonselections. The Court of Federal Claims held that Lindsay's complaint failed to state a claim upon which relief can be granted in that it presented a nonjusticiable challenge to discretionary military functions, or, in the alternative, that Lindsay had failed to set forth a sufficient connection between the alleged errors in his records and his nonselection for promotion. We hold that Lindsay presents a justiciable challenge grounded on the alleged failure of the Air Force to follow its own procedural regulations. We further hold that Lindsay's allegations, if proven, would set forth enough material to impel a further inquiry into the relationship between the alleged errors and his nonselection, and therefore vacate the dismissal of his complaint.

BACKGROUND

Appellant Daniel Lindsay served in the United States Air Force from 1978 to 1994, after having been honorably discharged and transferred from the Army, where he served from 1976 to 1978. He served in the Air Force Reserve from 1978 to 1985, earning the rank of Captain and the Aeronautical Rating of Navigator, and was integrated into the Regular Air Force in 1985.

In 1986, then-Captain[1] Lindsay was a navigation instructor with the Technical Assistance Field Team (TAFT), 966 Airborne Warning and Control (AWAC) Training Squadron, based at Tinker Air Force Base in Oklahoma. Under an arrangement approved in 1981, the United States had agreed to sell $8.5 billion worth

---

1. All indications of rank for military officers refer to their rank in 1986, when the events giving rise to this case transpired.

of AWACS radar surveillance aircraft and refueling aircraft to Saudi Arabia. Lindsay's duties with the TAFT included instructing Royal Saudi Air Force (RSAF) personnel to operate the AWACS aircraft before the first planes were delivered to Saudi Arabia in June 1986.

During this assignment, Lindsay experienced difficulties with a particular RSAF trainee, a flyer of considerable family political influence but allegedly lesser navigational skills. According to Lindsay's superior, Major McMaster, this particular RSAF trainee resented being assigned an instructor he outranked, and proved uncooperative during training, frequently arriving late or not at all for flight briefings. After the TAFT team deployed to Saudi Arabia to complete the training, this RSAF officer reportedly threatened to have various TAFT personnel, contractors, and third-country nationals expelled from Saudi Arabia, and eventually left the AWACS program.

Lindsay, however, did not deploy to Saudi Arabia with the rest of the TAFT. Allegedly due to the political influence exerted by the RSAF trainee's family, the Saudi chief of the AWACS program requested that Lindsay be replaced with another instructor before the team came to Saudi Arabia, because "Capt. Dan Lindsay is too young in his experience to be able to do full justice to his appointment in the Kingdom." As a result of this request, Lindsay was removed from his assignment and remained at Tinker Air Force Base in Oklahoma, while the rest of the TAFT—including the two officers above him in the chain of command, Major McMaster and McMaster's superior, Major Morris—was deployed to Saudi Arabia.

Lindsay received an Officer Effectiveness Report (OER) for the period of September 1985 to May 1986, during which these events took place. At this time, the preparation of OERs was governed by Air Force Regulation (AFR) 36–10 (1982), as amended in 1985. AFR 36–10 specified that three officers were to sign a ratee's OER: a rater, an additional rater, and an indorser. These three officers occupied successively higher positions in the "rating chain," which was usually the same as the chain of supervision. Thus, the rater (who prepared most of the evaluation) was usually the officer's immediate supervisor, while the role of additional rater was to be filled by the rater's rater, i.e., the officer two levels above the ratee in the rating chain. Thus, in May of 1986, the persons designated by AFR 36–10 to be Lindsay's rater and additional rater were, respectively, Major McMaster and Major Morris.

The third officer to sign an OER was the "indorser," by default the additional rater's rater (three levels above the ratee in the chain). However, the indorser was permitted to defer to a person higher in the rating chain if desired, in which case the person deferred to became the indorser. According to Lindsay, the level at which an OER was indorsed was a critical marker of an OER's favorability, and an OER indorsed at a low level was a clear "do not promote signal" to subsequent selection boards.

Because the rest of the TAFT deployed to Saudi Arabia in May of 1986, Lindsay's immediate superior and rater, Major McMaster, submitted his comments in draft and signed the OER form in blank. McMaster later stated that certain portions of his comments were not transcribed correctly onto Lindsay's final OER, although those errors were subsequently corrected.

McMaster's rater was Major Morris (also deployed to Saudi Arabia), and above Morris in the reporting chain were three officers who remained stationed in Oklahoma: Major Slagle (Operations Officer of

the 966 AWAC Training Squadron), Lt. Colonel O'Neill (Commander of the Squadron), and Colonel Sterk (Commander, 552 AWAC Wing). Lindsay's May 1986 OER was signed by Major Slagle as additional rater, and by Colonel Sterk as indorser. Lindsay's complaint alleged that the presence of Major Slagle—who was three steps higher in the rating chain than Lindsay—as his additional rater violated AFR 36–10. AFR 36–10 required that the additional rater be the rater's rater (*i.e.*, two steps higher than Lindsay in the rating chain) "or someone lower in the rating chain when deemed appropriate." Thus, Major Morris, the officer who recommended that Lindsay be removed from the TAFT, would ordinarily have been the additional rater. At least for purposes of this appeal, the government does not contest that Lindsay's OER was written in violation of Regulation 36–10.

Although Slagle made positive comments on Lindsay's OER, he, and his superior, Lt. Colonel O'Neill, later stated that they did not recommend Lindsay's OER for a high level of indorsement. Allegedly on account of these recommendations, Colonel Sterk, an O–6 grade officer, signed Lindsay's May 1986 OER rather than passing it to a higher level officer for indorsement. According to Lindsay, this low level of indorsement, a steep decline from the O–8 officers who had indorsed his two previous OERs and the O–9 and O–7 officers who indorsed subsequent OERs, had extraordinarily damaging consequences for his promotion prospects. Further damaging in Lindsay's view was Sterk's final recommendation—"Promote"—which, along with other language only moderately praising Lindsay's abilities, was allegedly an unambiguous "do not promote" recommendation.

Although Lindsay also alleged that his October 1986 OER was closed out without all facts available to the indorser (an O–7), Lindsay alleges that his May 1986 OER was primarily responsible for his being passed over for promotion to Major in December 1986, when 85 percent of his peer Navigators were selected for promotion. According to Lindsay, the consequences of such a passover—even though Lindsay was promoted to Major by his next selection board in 1987—were devastating. Although Lindsay's next board selected him "above zone" for promotion to Major, Lindsay was not selected for promotion to Lieutenant Colonel by his next board in November 1992. Lindsay claims that his previous above-zone promotion, as well as the continued presence of the 1986 OERs in his records, handicapped him in comparison to other candidates who had been promoted to Major the first time, from within the zone. Major Lindsay was considered for above zone promotion to Lieutenant Colonel in October 1993 by a second board, which selected only one percent of the "above zone" Navigators for promotion. Major Lindsay was not one of these one percent, and his second failure of selection for promotion compelled him to retire from the Air Force in 1994.

Immediately after his retirement, Lindsay petitioned the Air Force Board for Correction of Military Records (AFBCMR) to void his May 1986 and October 1986 OERs, and for retroactive promotion to Major in 1986. The AFBCMR denied his petition as untimely. Upon repetition to the AFBCMR—in which Lindsay (now represented by counsel) also sought promotion to Lieutenant Colonel and reinstatement—the Board found that "it would be in the interest of justice to excuse the failure to timely file." However, the Board found no error, injustice, or violation of regulations in Lindsay's OERs. The AFBCMR further found that Lindsay's selection boards "had sufficient records" of Lindsay's performance before

them in order to make their promotion decisions. Lindsay appealed the AFBCMR decision to the Court of Federal Claims, which upon the government's motion dismissed his complaint for failure to state a claim upon which relief can be granted. The Court of Federal Claims held that Lindsay's claim was not justiciable, or, in the alternative, that he had failed to allege sufficient facts to demonstrate a nexus between the alleged errors in his OERs and his nonselection for promotion. 28 U.S.C. § 1295(a)(3) vests this court with exclusive jurisdiction over Lindsay's appeal from the dismissal of his claim.

I

When the Court of Federal Claims dismisses a complaint for failure to state a claim upon which relief can be granted, we review the propriety of that dismissal *de novo*. *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000). A motion to dismiss under Court of Federal Claims Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy. In reviewing the dismissal, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the claimant's favor. *Id.* We decide *de novo* whether a claim challenging a military decision presents a nonjusticiable question. *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir.1995).

II

The fundamental question of justiciability we confront here is whether "tests and standards" exist against which a court can measure the challenged action. *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988). Because "decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments," *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review. *Voge*, 844 F.2d at 780. Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention fall into this category, and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so. Based on this principle, neither the Court of Federal Claims nor this court will review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service. Such unreviewable determinations include a conclusion that removal of a defective OER would not have made any difference to an officer's prospects for retention on active duty in the reserves, *Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990), or prospects for promotion, *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir.2000).

Where, however, review is sought not of the substance of a military decision, but instead its compliance with an applicable statute or regulation, we have not abstained from review. The military no less than any other organ of the government is bound by statute, and even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them. *See Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir.1993). A claim of procedural violations may present a justiciable controversy because "the test or standards against which this court measures the military's action are inherent: they are the applicable stat-

utes and regulations." *Adkins,* 68 F.3d at 1323. A claim for relief based on an allegedly defective OER therefore states a justiciable controversy if the claim is premised on procedural defects in the decision-making process that are clear violations of a statute or regulation that governs the process by which OERs are compiled and considered. *See, e.g., id.* at 1325–26; *Engels v. United States,* 230 Ct.Cl. 465, 678 F.2d 173, 176 (1982); *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704, 707–09 (1980); *Cunningham v. United States,* 39 Fed. Cl. 688, 692 (1998); *Womack v. United States,* 34 Fed. Cl. 755, 761 (1996).[2]

■ In the case before us, Lindsay's complaint alleged at least one prejudicial violation of a specific objective requirement of a regulation: namely, AFR 36–10, which designates the additional rater as the rater's rater or someone lower in the rating chain. Lindsay contends that whether his May 1986 OER complied with AFR 36–10 is a determination within the scope of judicial competence, and therefore the AFBCMR's failure to correct that OER is a decision that may be reviewed by the Court of Federal Claims in connection with the relief Lindsay seeks. The Court of Federal Claims, however, concluded that Lindsay had presented a nonjusticiable claim, relying primarily on the authority of *Fluellen v. United States.* In *Fluellen,* an Air Force officer challenged the decision of a selection board that had relied upon a senior rater's Promotion Recommendation Form, which in turn relied upon an OER that was later voided by the AFBCMR. *Fluellen,* 225 F.3d at 1300. The AFBCMR concluded that, even if the

OER had been improperly considered, the removal of this one OER from the record would not have made any difference to Fluellen's prospects for promotion. Because the AFBCMR's decision required an evaluation of Fluellen's promotability, we held that the lack of an applicable statutory or regulatory standard to gauge the AFBCMR's promotability decision precluded judicial review of that decision. *Id.* at 1304. Thus, the Board decision in *Fluellen,* like that in *Sargisson* and *Murphy,* could not be reviewed because "[a] court lacks the special expertise needed to review ... officers' records and rank them on the basis of relative merit." *Sargisson,* 913 F.2d at 922.

Here, contrary to the Court of Federal Claims's impression, the AFBCMR did not conclude that the challenged OERs would not have affected Lindsay's passovers. Although Lindsay requested the Board to void the May 1986 and October 1986 OERs, the Board refused to do so, finding no violation of regulations in Colonel Sterk's indorsement and "no evidence the contested reports were in error or unjust." But rather than concluding that removal of the challenged OERs would not have affected Lindsay's prospects for promotion, the Board simply concluded that Lindsay's selection boards "had sufficient records ... in order to make reasonable determinations concerning his promotability." Because the AFBCMR rejected Lindsay's allegations of error or injustice in his OERs, we can only interpret the AFBCMR's conclusion to state that Lindsay's record, with the challenged OERs included, provided a

---

**2.** Prior to passage of the Defense Officer Personnel Management Act of 1980 (DOPMA), many OER challenges were based on statutory requirements that selection boards consider an officer on a record which portrayed the officer's service career on "a fair and equitable basis." 10 U.S.C. §§ 3442(c), 8442(c) (1976). *See Sargisson,* 913 F.2d at 922. These statutory provisions were repealed by the DOPMA. Lindsay does not cite an Air Force regulation with comparable requirements, as did the Marine Corps claimants in *Cunningham* and *Womack.*

sufficient evidentiary basis on which the selection board could determine Lindsay's promotability. Thus, in contrast to *Fluellen* and *Sargisson*, the AFBCMR here made no discretionary judgments regarding Lindsay's fitness for promotion. Had the AFBCMR concluded that removal of the challenged OERs would not have affected Lindsay's passovers, its determination would not be reviewable; its determination that the challenged OERs were free of error or injustice is reviewable.

The government, relying on Lindsay's allegations that the low indorsement level of his 1986 OERs crippled his Air Force career, seeks to frame this case as a challenge to the indorsement of the OERs, primarily the indorsement by Colonel Sterk of Lindsay's May 1986 OER. The government argues that because the decision by an indorser to pass the OER higher up in the rating chain is a discretionary one, and because Colonel Sterk's failure to do so violated no regulation, Colonel Sterk's indorsement was an unreviewable exercise of military discretion. The government's premises are sound but its ultimate conclusion is not. Lindsay's alleged regulatory violation in this case is not that Colonel Sterk improperly failed to defer the OER to a higher-ranked indorser, but that the wrong person served as the additional rater. Whether Lindsay can establish a nexus between that irregularity and his nonselection remains to be seen, but the identity of the additional rater is fixed by regulation and the question of whether or not his OER is legally defective for having been written in violation of a published Air Force regulation is one that lies within the competence of courts to assess.

## III

 Although the Court of Federal Claims dismissed Lindsay's claim as nonjusticiable, the Court of Federal Claims concluded in the alternative that the alleged errors in Lindsay's records did not rise to the level of legal or procedural error warranting review of the Board's recommendation. As the Court of Federal Claims recognized, even where a claimant establishes a clear violation of a specific objective requirement of a statute or regulation, or a misstatement of a significant hard fact, the claimant is not entitled to relief unless the claimant shows a "nexus" between the error or injustice and the subsequent decision not to promote the officer or separate him or her from service. *Hary*, 618 F.2d at 706. The burden rests with the claimant to set forth a prima facie showing of substantial connection between the error and the adverse action, either by showing that the error substantially affected the decision in question, or at least setting forth "enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Id.* at 707; *see also Engels*, 678 F.2d at 176–77. Accepting *arguendo* Lindsay's allegation that his May 1986 OER violated AFR 36–10, the Court of Federal Claims nonetheless erred by holding that Lindsay's complaint did not allege sufficient facts to establish a connection between the violation and his nonselection for promotion, and by assuming that the AFBCMR had already considered the issue and decided it against Lindsay. Taking, as we must at this stage in the proceedings, all well-pleaded factual allegations in the complaint to be true and drawing all reasonable factual inferences in Lindsay's favor, we find that at least one of the errors alleged by Lindsay violated not only the letter but also the principle behind AFR 36–10, and that, if Lindsay's allegations are to be believed, the natural consequences of this error led to his nonselection for promotion and ultimately to his involuntary separation from the service.

.Prior to 1985, the designation of the rater's rater as the additional rater was more precatory than mandatory, and AFR 36–10 permitted the additional rater to defer to a person higher in the rating chain. That is, the role of additional rater could be delegated to a higher-ranking officer who was further away from the ratee in the chain of supervision. Commanders were further permitted to deviate from the ordinary structure of the rating chain if deemed "justifiable."

In 1985, however, the Air Force amended AFR 36–10 to emphasize that the additional rater should be the rater's rater, or someone *lower* in the rating chain when deemed appropriate. While not precluding commanders from restructuring the rating chain, the 1985 amendment restricted such deviations to those that would "improve the evaluation process consistent with the best interests of the Air Force," and forbade commanders from altering the rating chain "solely to authorize higher level evaluators." The discussion accompanying the rule change explained that lower-level additional raters would typically have "better and more personal knowledge of the ratee," and that requiring the rater's immediate superior to serve as additional rater would yield "more first hand knowledge of ratee performance."

In light of the specific objectives set forth by the Air Force for AFR 36–10's requirement that the additional rater be the rater's rater, we think that Lindsay's allegations set forth a prima facie case of nexus between the alleged violation of AFR 36–10 and his initial nonselection for promotion to Major in December of 1986. Lindsay alleges that his May 1986 OER was defective because his rater's rater, Major Morris, an officer with first hand knowledge of Lindsay's performance, did not serve as the additional rater as specified by AFR 36–10. An officer one level higher in the rating chain, Major Slagle, signed the OER instead.

Major Slagle, as well as Slagle's superior, Lt. Colonel O'Neill, was also involved in recommending the final level of indorsement for Lindsay's May 1986 OER. Lindsay's complaint refers to a 1993 declaration from Major Slagle, who stated that the discussions on whether to recommend Lindsay's OER for a higher level of indorsement centered on Lindsay's difficulties with the RSAF student—difficulties that seemed to reflect poorly on Lindsay's ability "to interact with his student, irregardless of the student's nationality or cultural background." According to Slagle, the actual circumstances of Lindsay's removal from the TAFT, and the RSAF trainee's "reputation for use and abuse of his families [sic] political influence" did not surface in these discussions and "represent significant facts that could have ultimately affected the level of endorsement." Lt. Colonel O'Neill, the officer between Major Slagle and Colonel Sterk in the rating chain, stated that he did not recommend a high level of indorsement for Lindsay's OER because Lindsay "could not seem to cope with the demands of instructor duty with his Saudi student." Like Major Slagle, Lt. Colonel O'Neill stated that he was unaware of the RSAF trainee's political influence and that, if known, the actual facts concerning Lindsay and the RSAF trainee could have affected his recommendation that Lindsay's OER not be indorsed at a higher level.

In the absence of the alleged violation of AFR 36–10, Major Morris—the officer who recommended that Lindsay be removed from the TAFT—would have served as additional rater on Lindsay's OER. To substantiate the allegation that Morris's absence from the rating chain was a prejudicial violation of the regulation, Lindsay submitted a declaration written

by Morris after Morris retired from the Air Force. Morris, who stated that "[t]he best navigator ever to hold a set of dividers would have had the same problems that Captain Lindsay had with" the RSAF trainee, explains that he decided to replace Lindsay on the TAFT solely to placate a politically influential officer of the host country, and not because he lacked confidence in Lindsay's interpersonal skills or in any other aspect of Lindsay's performance. Morris further states that he, and the rest of the TAFT members deployed to Saudi Arabia, believed that Lindsay's OER "was still going forward for endorsement [sic] above Wing," *i.e.*, for indorsement by a higher-ranked officer than Colonel Sterk.

Reviewing Lindsay's complaint and the testimonials to which it refers, we find that Lindsay has pled a sufficient nexus between the alleged violation of AFR 36–10 and the alleged adverse effects the May 1986 OER had on Lindsay's career. The statements from officers in the rating chain tend to show that the adverse effects on his military records flowed from the very harm that AFR 36–10 sought to forestall: the evaluation of ratees by officers without first hand knowledge of a ratee's performance. Lindsay does not, however, submit a similar statement from Colonel Sterk, the officer who indorsed the OER and whose decision it would have been to pass Lindsay's OER up for a higher level of indorsement. The government argues that because Lindsay has not obtained such cooperation from Colonel Sterk, in whose sole and unfettered discretion the decision to indorse Lindsay's OER lay, Lindsay cannot under any circumstances establish that either the alleged factual omissions or the alleged violation of AFR 36–10 rise to the level of legal or procedural error warranting correction by the Court of Federal Claims or the AFBCMR.

But even if Colonel Sterk's decision is unreviewable, the possibility that a higher-ranking officer might adhere to his or her low evaluation of the claimant does not by itself sanitize a defective record when the judgment of lower-ranking evaluators has been contaminated by clear legal error. *See Engels*, 678 F.2d at 176 n. 8. To hold otherwise would be to insulate all otherwise justiciable errors from administrative or legal review so long as an officer higher up in the chain of evaluation makes a discretionary judgment. If the alleged regulatory violations in Lindsay's OER are judged ultimately to render that OER so defective as to warrant its expungement from Lindsay's records (a matter on which we express no opinion), then neither Board nor court need pass on the propriety of Colonel Sterk's indorsement decision.

Lindsay's allegations may be difficult to prove. The ultimate determination of prejudicial error requires prediction about how an officer's record would appear to a promotion board in the absence of the errors, and a conclusion about whether the officer would have been promoted if his record was free of error. *See Hary*, 618 F.2d at 710. These predictions and conclusions are based, however, on the facts of the claimant's service record and the facts of the competitive selection process for the selection board that considered the claimant. Because the nexus inquiry is fact-intensive, dismissal for failure to state a claim is appropriate only where the claimant's allegations cannot under any circumstance establish that the errors substantially affected the decision to separate claimant from the service. Indeed, even less may suffice, for a claimant need not provide definitive proof of prejudicial error before the Court of Federal Claims, but only enough of a factual predicate to direct further inquiry into the nexus between the error or injustice and its adverse consequences. *Id.* at 707.

Where the complaint rests on nothing but pure speculation, or where the administrative tribunal has set forth such detailed, substantiated, and legally proper findings that no facts pled by the claimant could carry the burden of establishing a prima facie case of nexus, the complaint may fail to state a claim upon which relief can be granted. But here, Lindsay's complaint alleges a clear violation of a governing Air Force regulation and procedure and sets forth facts tending to show that the violation made his service record appear substantially worse than it would absent that violation. The complaint sets forth further facts, namely the otherwise favorable contents of Lindsay's service record and the relatively high promotion rate from the first board that did not select Lindsay for promotion to Major, that suggest Lindsay might have been promoted to Major by that board had the allegedly defective OER not been considered. The complaint sets forth still more facts suggesting that Lindsay's subsequent failure of promotion and separation from the service may have been an adverse consequence of his initial failure to be selected for promotion to Major. The Air Force's own comments on the revision of AFR 36–10 state that the position of additional rater should be restricted to the rater's rater (or lower-ranking officer) in order to ensure that those persons with the best first-hand knowledge of the ratee's performance serve as his evaluators. Given that Lindsay's theory of nexus rests on the very same ground that prompted the Air Force to revise AFR 36–10—that being the lower fidelity of OERs when written by higher-ranking officers without personal knowledge of the ratee's performance—we think that Lindsay has pled sufficient facts to establish a prima facie showing of substantial connection between the alleged violation of AFR 36–10 and his subsequent passover.

This case might be more difficult if the AFBCMR had found no nexus between any alleged defects in Lindsay's OER and his subsequent nonselections for promotion, although such determinations are still subject to review under the substantial evidence or arbitrary and capricious standards. *See Engels,* 678 F.2d at 177. Here, contrary to the belief of the Court of Federal Claims, the AFBCMR did not make a finding of lack of nexus between the alleged error and Lindsay's ultimate discharge. Because the AFBCMR found "no evidence the contested reports were in error or unjust," the AFBCMR had no occasion to consider whether legally cognizable errors in Lindsay's OERs might have substantially affected the decision to separate Lindsay from service. The AFBCMR's statement that the selection boards had sufficient records to determine Lindsay's promotability is not equivalent to a factual determination of lack of nexus with respect to a specific alleged error. *See Cunningham,* 39 Fed. Cl. at 693–94.

## CONCLUSION

For the reasons set forth above, we hold that Lindsay's complaint presents a justiciable question of military compliance with published regulations, and that Lindsay alleges sufficient facts to establish a prima facie case of nexus between those procedural violations and his subsequent nonselection for promotion and involuntary separation from service. We therefore vacate the dismissal of Lindsay's complaint, and remand the case to the Court of Federal Claims for further proceedings.

VACATED AND REMANDED.