NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――

**LAWRENCE MENDEZ, JR.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

―――――――――

2013-5033

―――――――――

Appeal from the United States Court of Federal Claims in No. 11-CV-0160, Judge Christine O.C. Miller.

―――――――――

Decided: September 17, 2013

―――――――――

LAWRENCE MENDEZ, JR., of Oceanside, California, pro se.

MATTHEW F. SCARLATO, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Principal Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director.

---

Before O'MALLEY, CLEVENGER, and TARANTO, *Circuit Judges.*

PER CURIAM.

Lawrence Mendez, Jr., a former United States Marine Corps officer, appeals a decision of the United States Court of Federal Claims that denied his request for correction of his military records, reinstatement, and back pay. Mr. Mendez, after receiving an adverse fitness report, asked the Board for Correction of Naval Records to remove the unfavorable report from his record. The Board denied his request, and Mr. Mendez sued the United States in the Claims Court. That court determined—with one exception that was later held cured after remand—that the fitness report complied with Marine Corps Order P1610.7F, the applicable Marine Corps regulation. We affirm.

## BACKGROUND

Mr. Mendez served as an officer of the Marine Corps. In September 2006, he held the position of Battalion Adjutant of the 1st Battalion, 12th Marine Regiment, 3rd Marine Division. He and his unit were deployed to Iraq in March 2007 as part of Operation Iraqi Freedom. In July 2007, Mr. Mendez's commanding officer relieved him of his duties as Battalion Adjutant.

After his removal, the Marine Corps provided Mr. Mendez with a fitness report, which evaluated his performance from February 1, 2007, through July 28, 2007. The report, prepared by a Reporting Senior, described Mr. Mendez as deficient in various evaluation categories, including Mission Accomplishment, Leadership, Intellect and Wisdom, and Individual Character. The Reporting Senior described Mr. Mendez as "unsatisfactory" when compared to other Marines of the same grade and con-

cluded that Mr. Mendez should "not be considered for promotion with [his] contemporaries."

Mr. Mendez responded with his own description of the events at issue and challenged the Reporting Senior's evaluation. In accordance with Marine Corps Order P1610.7F, which includes the policies, procedures, and administrative instructions for the preparation, submission, and processing of fitness reports, Mr. Mendez's adverse fitness report received two reviews by senior officers. The first was by a Reviewing Officer, a lieutenant colonel, who was required to "[a]ssess adverse reports and adjudicate factual differences between the Reporting Senior's evaluation and [Mr. Mendez's] statement." Marine Corps Order P1610.7F ¶ 2004.3.g. The Reviewing Officer identified some inconsistencies between the Reporting Senior's evaluation and Mr. Mendez's statement. After examining these inconsistencies, the Reviewing Officer confirmed many of the Reporting Senior's findings.

The next review was by a Third Officer Sighter, a brigadier general, who examined the fitness report, Mr. Mendez's statement responding to that report, the Reviewing Officer's findings, and a new statement from Mr. Mendez responding to the Reviewing Officer's findings. Although acknowledging some areas of disagreement, he confirmed the findings of the Reporting Senior and Reviewing Officer and concluded that Mr. Mendez "failed to perform his duties to the satisfaction of both the [Reporting Senior] and the [Reviewing Officer]."

On December 3, 2008, Mr. Mendez filed an Application for Correction of Military Record with the Board for Correction of Naval Records, requesting removal of the fitness report from his military record. Under the auspices of the Board for Correction, the Marine Corps Performance Evaluation Review Board (PERB) conducted an initial review of Mr. Mendez's application and advised the Board for Correction that the fitness report was "adminis-

tratively correct and procedurally complete" and that the fitness review should remain a part of Mr. Mendez's official military record. Mr. Mendez filed a rebuttal statement arguing that the fitness report was untrue and unjust. On April 9, 2009, after considering the PERB's recommendation and Mr. Mendez's response, the Board for Correction denied Mr. Mendez's request to remove the fitness report from his records. One year later, after receiving additional submissions, the Board for Correction denied reconsideration. The Marine Corps discharged Mr. Mendez in September 2010.

On March 14, 2011, Mr. Mendez filed a complaint in the Claims Court alleging that the preparation and review of the fitness report violated the governing regulation, Order P1610.7F. According to Mr. Mendez, the adverse report led to his being twice denied promotion to the rank of captain and, as a result, to his involuntary removal from the Marine Corps. Mr. Mendez sought reinstatement and back pay, as well as the removal of the report from his military record.

Mr. Mendez and the United States filed cross-motions for judgment on the administrative record pursuant to Claims Court Rule 52.1. On January 31, 2012, the Claims Court issued its decision, reviewing each allegation by Mr. Mendez and granting judgment on the merits in favor of the United States on all but one issue. *Mendez v. United States*, 103 Fed. Cl. 370 (Fed. Cl. 2012). The court first rejected Mr. Mendez's argument that the contested fitness report was deficient because the Reporting Senior "failed to individually address various character and performance traits in evaluating plaintiff." *Id.* at 378-79. The court explained that paragraph 4006.1 of the Order, in giving the Reporting Senior a "'broad cross section of areas to evaluate'" that together form a comprehensive picture of the "'Marine's demonstrated capacities, abilities, and character,'" does not require the Reporting Senior to "provide narrative comments regarding each

attribute." *Id.* at 382. The court found substantial evidence that the Reporting Senior adequately considered the necessary attributes as required by the regulation. *Id.*

The court also ruled that the Third Officer Sighter had not added new, adverse information to the report without giving Mr. Mendez an opportunity to respond. *Id.* The court reasoned that the Third Officer Sighter's comments were responsive to the information presented by the Reporting Senior and Reviewing Officer, and that his conclusions were not "new, adverse material" under paragraph 5005.c.3 of the Order. *Id.*

The court then addressed Mr. Mendez's argument that the fitness report did not comply with paragraphs 5005.3.a.(1) and 5004.1 of the Order. According to Mr. Mendez, the Reviewing Officer and Third Officer Sighter failed to resolve factual discrepancies between Mr. Mendez's version of the events in question and the version contained in the fitness report. 103 Fed. Cl. at 382. Although Mr. Mendez alleged that there were several examples of such unresolved factual discrepancies, the court found only one supported by the record. *Id.*

The fitness report discussed an incident involving one of Mr. Mendez's subordinates whose wife would need care after an upcoming routine surgery. Despite a Marine Corps policy limiting the use of emergency leave from the combat zone, the report said, Mr. Mendez did not timely pursue the possibility of in-home care (by a company called TRICARE) as a solution and, as a result, allowed the subordinate to leave his post to return home. *Id.* at 372, 380. The "[Reviewing Officer had] indicated that a workable solution—Tricare in-home medical care—was available to assist" the subordinate's wife and found Mr. Mendez deficient in carrying out his shared responsibility for finding a solution that would keep his subordinate with his unit. *Id.* at 383. In his response, Mr. Mendez

had stated that (a) after he learned about the Tricare possibility, he obtained the necessary contact information for Tricare and directed his subordinate to make an inquiry and (b) the resulting follow-up, which included a conversation between the Tricare agent and the doctor of the subordinate's wife, led to the conclusion that "Tricare did not offer the home care" needed. Despite this discrepancy, the Third Officer Sighter reported that Mr. Mendez "'failed to thoroughly research available solutions that a young Marine in his section needed.'" *Id.* The Claims Court found that this statement "reflect[ed] that the [Third Officer Sighter] had concluded that Tricare in-home medical care was an available option, yet the [Third Officer Sighter] did not indicate whether or not he took steps to verify the availability of in-home care . . . in accordance with" paragraphs 5005.3.a.(1)-(3) of the Order, which required the Third Officer Sighter to try to resolve any factual inconsistencies and to indicate what steps he took and how the matter was resolved. *Id.* The Claims Court explained that the "Tricare issue was a specific, identifiable incident that plaintiff's command relied on repeatedly to demonstrate his substandard performance." 103 Fed. Cl. at 383. For that reason, the court remanded the case with an instruction to the Board for Correction to reconsider Mr. Mendez's application after reviewing the identified factual discrepancy. *Id.* at 384.

On August 20, 2012, the Board for Correction reconsidered the matter and again denied Mr. Mendez's application to remove the fitness report from his military record, "finding that the evidence did not establish a probable material error of injustice." *Mendez v. United States*, 108 Fed. Cl. 350, 355 (Ct. Fed. Cl. 2012) (*Mendez II*). In Mr. Mendez's favor, the Board for Correction observed that the Commandant of the Marine Corps had directed modification of Mr. Mendez's military record to remove any reference to the Tricare issue from the fitness report. *Id.* Nevertheless, the Board for Correction con-

cluded that the fitness report remained adverse even as modified and that Mr. Mendez's promotion would definitely have been unlikely even without the Tricare information. *Id.* Accordingly, the Board held that there was no basis to set aside Mr. Mendez's discharge. *Id.*

On return of the case to the Claims Court, the parties renewed their cross-motions for judgment on the (now expanded) administrative record. On December 20, 2012, the court ruled that the Board for Correction's decision to modify but not remove the fitness report was not arbitrary or capricious and was supported by substantial evidence. *Id.* at 356. The court concluded that, in light of the several independent adverse findings in the fitness report, the Board for Correction could permissibly reject Mr. Mendez's allegation that the Tricare issue so "'permeates the entire fitness report'" as to require removing the entire report and overturning the discharge. *Id.* at 357. The Claims Court entered judgment in favor of the government.

Mr. Mendez timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We give de novo review to a legal determination of the Claims Court, including its determination on the administrative record that the Board for Correction did not act arbitrarily, capriciously, contrary to law, or without substantial evidence. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). We note that the government raises no question about justiciability, presumably because Mr. Mendez seeks outright removal of the fitness report from his military record and the Board for Correction did not find that such removal would have had no effect on his prospects for promotion. *See Lindsay v. United States*, 295 F.3d 1252, 1258-59 (Fed. Cir. 2002).

Mr. Mendez argues on appeal that the report is both procedurally and factually deficient. He first argues that paragraph 4006 of the governing Order P1610.7F required that the Reporting Senior's comments in the fitness report contain sufficient content to be "verified, considered substantial, or quantified." Brief for Appellant at 36. He contends that the fitness report's statements that he does "not accept responsibility for his short comings," that he "routinely deflects blame for problems that he caused to subordinates," and that his failure to supervise resulted in the "inability to process awards and failure to secure sensitive personnel information" are insufficient because they do not provide him with the context necessary to challenge the allegations. *Id.* at 36-37. Those statements, which the report supports with several specific examples, were endorsed by the Reviewing Officer and Third Officer Sighter. *See, e.g.,* Supp. App. at 48-49 (Reviewing Officer noting that Mr. Mendez made a false statement regarding a reporting requirement that revealed his unwillingness to "accept responsibility for his actions and statements"; describing instances in which Mr. Mendez was "argumentative" and "insolent" when he was confronted by superiors with shortcomings in his performance); *id.* at 54 (Third Officer Sighter noting Mr. Mendez's attempt to "shift the blame for his failures to others" in his statements).

The Board for Corrections could properly conclude that the content of the fitness report meets the requirement of paragraph 4006. Paragraph 4006.1 explains that "Sections D, E, F, and G comprise 13 attributes that give the [Reporting Senior] a broad cross section of areas . . . that the Marine Corps deems most important" to the evaluation process. "Collectively these attributes provide a clear picture of the Marine's demonstrated capacities, abilities, and character." *Id.* at ¶ 4006.1.b. The Claims Court correctly held that this language does not require that the fitness report provide extensive narrative com-

ments specifically identifying each attribute. *Mendez*, 103 Fed. Cl. at 382. Rather, by focusing reviewing officers on specific attributes, the regulation envisions that the resulting report will present a comprehensive picture of the Marine's performance in critical areas. And Mr. Mendez's fitness report, even if not always through express citation to a specific attribute, addressed each quality and provided concrete examples of Mr. Mendez's perceived deficiencies that Mr. Mendez could and did address in response.

Mr. Mendez next argues that the Claims Court erred because the government did not resolve alleged factual discrepancies as required by paragraphs 5004 and 5005.3 of the Order. He alleges that the Claims Court "found several disagreements, challenges, [and] inconsistencies . . . that were not addressed as required" and that "created and perpetuated a clear bias, injustice, and ultimate acceptance of an unlawful invalid fitness report." Brief for Appellant at 45. But the Claims Court did not so find as to any of the alleged unresolved "factual discrepancies" that remain after the remand. The Claims Court instead noted that the Third Officer Sighter was not required to enumerate every factual dispute expressly, that a presumption exists that the Marine Corps conducted Mr. Mendez's fitness review "'correctly, lawfully, and in good faith,'" *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992), and that—except for the TRICARE issue, which is no longer a live one—there simply was not a sufficient basis in the record for overturning the Board for Correction's finding that the review met the Order's requirements, including the requirement to address factual discrepancies. *Mendez*, 103 Fed. Cl. at 381-83. Given the deference due in the judicial review of agency action, and the principle that implicit resolution of factual disputes is not the same as failure to resolve them, we have no basis for a different conclusion.

One specific contention by Mr. Mendez is that the Reporting Senior and Third Officer Sighter failed to consider evidence that (1) his inability to process service awards for soldiers and to secure confidential information was a result of ineffective supervision, (2) he was not actually required to enter the service awards, and (3) he relied on reports from his subordinates that service awards had been entered. *See* Brief for Appellant at 46, 49, 56. Whether presented as a failure-to-resolve challenge or some other challenge, this contention provides no basis for reversal. The reviewing officers in fact considered the evidence Mr. Mendez points to in making their determinations. *See* Supp. App. at 47 (Reviewing Officer finding failures "in the task of accurate accountability of personnel within the Task Force" and citing specific examples), *id.* at 53 (Third Officer Sighter noting "disagreement" concerning certain reporting but concluding that "what is not in question is the fact that [Mr. Mendez] habitually submitted late reports that often contained erroneous data," which Mr. Mendez conceded).

Mr. Mendez also alleges that the conclusions of the Third Officer Sighter "were not derived from the statements" he made and are "unsupported by the record." Brief for Appellant at 48. The Claims Court concluded that the Third Officer Sighter's comments were responsive to the information presented by the Reporting Senior and Reviewing Officer and did not constitute "new, adverse information" under paragraph 5005.c.3 of the Order. *Mendez*, 103 Fed. Cl. at 382. Mr. Mendez acknowledges that the Claims Court was correct "that the [Third Officer Sighter] is required to deduce and provide his comments in adjudicating factual differences." Brief for Appellant at 48. Mr. Mendez gives no example of the Third Officer Sighter's going beyond that required role to introduce new facts. Mr. Mendez argues, for example, that the Third Officer Sighter's conclusion that he was "'too involved with the minutia of the section'" constitutes new, adverse

material, Brief for Appellant at 47 (citing Supp. App. 53), but the quoted statement is just an evaluative comment based on material already in the record, including Mr. Mendez's statement "that I was more involved in my shop than perhaps I should have been." Supp. App. at 51.

Mr. Mendez's final argument on appeal is that the Claims Court should have considered paragraph 1610.11D of the Order and that "[t]he comments and actions provided by the PERB are not consistent" with that provision. Brief for Appellant at 61. Mr. Mendez raises this argument for the first time on appeal. Arguments not made in the trial court are normally considered waived in the absence of exceptional circumstances. *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). We find no such circumstances here, noting that Mr. Mendez had counsel in the trial court and that all he has done here is to make a broad-brush reference to a lengthy provision of the Order and allege its violation. We decline to address Mr. Mendez's new argument.

CONCLUSION

Because Mr. Mendez has failed to demonstrate that the Board for Corrections acted arbitrarily, capriciously, contrary to law, or without substantial evidence, we conclude that the judgment of the Claims Court should be affirmed.

No costs.

**AFFIRMED**