**Robert L. LOEH, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 02–895C.

United States Court of Federal Claims.

Sept. 16, 2003.

Robert L. Loeh, Ft. Leavenworth, KS, plaintiff, pro se.

Kathleen A. Kohl, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Lt. Bradley A. Appleman, Office of the Judge Advocate General, U.S. Navy, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss or, alternatively, for judgment upon the administrative record. Alleging violations of 10 U.S.C. §§ 624, 632, 642, and 1174 (2000), plaintiff seeks military separation pay based on his separation from the United States Department of the Navy (the "Navy"). Plaintiff specifically alleges that the Navy violated its own procedures for delaying promotions and denying a promotion to which he claims entitlement. In the alternative, plaintiff seeks judgment amounting to differential payment at the rate of the next higher grade. Argument is deemed unnecessary.

## FACTS

The following facts are derived from the administrative record, as supplemented by the parties' filings. Robert L. Loeh ("plaintiff") is currently incarcerated at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. *See Loeh v. United States,* 53 Fed.Cl. 2 (2002) (granting defendant's mo-

tion to dismiss for lack of subject matter jurisdiction over claim for retirement pay).[1]

On March 23, 1996, the Fiscal Year ("FY") 1997 Active–Duty Commander Line Promotion Selection Board recommended plaintiff for promotion from lieutenant commander to commander. Plaintiff's promotion was to be made permanent on June 1, 1997. Before the promotion became permanent, on February 10, 1997, Capt. B.M. Costello requested that plaintiff be "detached for cause" after plaintiff failed his physical readiness test and falsified the results of a test to reflect passing scores.

Despite the concerns involving the physical readiness tests, Capt. Costello signed a fitness report for plaintiff on April 6, 1997, indicating that plaintiff was "promotable." On June 27, 1997, Capt. Costello signed a subsequent fitness report for plaintiff, covering the same period as the April 6, 1997 report (November 1, 1996 to February 28, 1997). Although the June report contained four scores that differed from the April report, plaintiff still received a recommendation of "promotable." Capt. Costello altered the April 6, 1997 report, at some point after it had been signed and given to plaintiff, by crossing out his recommendation that plaintiff was "promotable" and indicating that plaintiff was "progressing," a lower rating. This series of events thus spawned three different versions of plaintiff's fitness report covering November 1, 1996, to February 28, 1997.

After being detached for cause and still prior to his promotion's becoming permanent, Chief of Naval Personnel Vice Adm. D.T. Oliver delayed the promotion on May 19, 1997, as a result of the failed and falsified physical readiness tests. The delay in plaintiff's promotion was ratified and extended by Assistant Secretary of the Navy for Manpower and Reserve Affairs Bernard Rostker, on behalf of Secretary of the Navy John H. Dalton, on December 8, 1997, in accordance with Secretary of the Navy Instruction ("SECNAVINST") 1420.1A (Jan. 8, 1991).

---

1. In plaintiff's previous action, he sought retirement pay under 10 U.S.C. § 6323; in the current action, he seeks separation pay under 10 U.S.C. § 1174. Retirement pay is a recurring monthly

payment earned after 20 years of active service, whereas separation pay is a one-time payment given to personnel who leave active duty, but have not yet qualified for retirement.

During the two-year period when plaintiff had been recommended for promotion to commander, but delayed from receiving the promotion, two selection boards met—those for FY98 and FY99. Plaintiff was not considered by either the FY98 or FY99 selection board because he remained, albeit delayed, on the FY97 promotion list.

On January 2, 1998, Vice Adm. Oliver recommended that Secretary of the Navy Dalton remove plaintiff's name from the FY97 promotion list. Secretary Dalton did so on March 13, 1998. The FY00 selection board was the first to consider plaintiff for promotion after plaintiff was removed from the FY97 promotion list. The FY00 board evaluated plaintiff on February 23, 1999, and did not recommend him for promotion; hence, plaintiff had twice failed to be selected for promotion within the terms of 10 U.S.C. § 629(c)(2).

A lieutenant commander who twice fails to be selected for promotion is involuntarily separated from the Navy, unless the officer is within two years of retirement. 10 U.S.C. § 632(a). At the time the FY00 selection board failed to recommend plaintiff for promotion, he had completed over 18 years of active service. Plaintiff was thus within two years of qualifying for retirement, which required his retention on active duty. See 10 U.S.C. § 632(a)(3). However, prior to qualifying for retirement, plaintiff was convicted on January 23, 2001, by a general court martial of, inter alia, drug trafficking. Because plaintiff forfeited all pay and allowances as part of his court martial sentence, entered on January 23, 2001, a claim for increased pay after the court martial would be moot.

Plaintiff will be incarcerated until April 2004, after which he will be separated from the Navy. Therefore, the issues before this court involve the propriety of the Navy's actions before plaintiff's criminal conviction. The crux of plaintiff's claim is that the Navy improperly delayed his promotion, which prevented him from going before the FY99 selection board. Plaintiff argues that he would have been denied promotion by the FY99 selection board and would have been involuntarily separated. Upon the involuntary sepa-

ration, he would have been entitled to separation pay.

Plaintiff seeks a change in his service record to show that by March 24, 1998, he had twice failed to be promoted and therefore qualified for payment of separation pay in accordance with 10 U.S.C. § 632(a)(1). In the alternative, plaintiff asks the court to promote him to the regular rank of commander as of his original promotion date of June 1, 1997, and award back pay from that date until February 6, 2001. Defendant moves for dismissal of plaintiff's complaint for lack of jurisdiction or, in the alternative, judgment upon the administrative record, countering that, as a matter of law, no statute or regulation entitles plaintiff to involuntary separation or promotion.

## DISCUSSION

### 1. Jurisdiction

The burden of establishing the court's subject matter jurisdiction rests on the party seeking to invoke it. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed.Cir.2002). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed.Cir.1997).

Because plaintiff is proceeding pro se, his filings are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). "[T]he pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" Forshey v. Principi, 284 F.3d 1335, 1357 (Fed.Cir.2002) (quoting Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Therefore, plaintiff's complaint has been reviewed carefully to ascertain whether,

given the most favorable reading, it supports jurisdiction in the United States Court of Federal Claims.

The leniency afforded plaintiff for formalities, however, does not relieve him of jurisdictional requirements. *Kelley v. Sec'y*, 812 F.2d 1378, 1380 (Fed.Cir.1987). In reviewing the sufficiency of a complaint for a lack of subject matter jurisdiction, the task of the federal court is "necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must accept as true facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must indulge all reasonable inferences in favor of the non-movant, *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995).

Plaintiff's complaint grounds subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), which authorizes the Court of Federal Claims to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Jurisdiction under the Tucker Act is strictly defined, such that courts are "not empowered to engraft additional limitations on the Court of [Federal] Claims' exercise of its jurisdiction." *Martinez v. United States*, 333 F.3d 1295, 1306 (Fed.Cir.2003) (en banc). Tucker Act jurisdiction is based on actions pursuant to contracts with the United States; illegal exactions of money by the United States; and money-mandating constitutional provisions, statutes, regulations, or executive orders. *See United States v. Mitchell*, 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Martinez*, 333 F.3d at 1302–03. The Tucker Act itself does not provide a substantive cause of action; rather, a plaintiff must cite elsewhere to a substantive cause of action in order to proceed. *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Collins v. United States*, 67 F.3d 284, 286 (Fed.Cir. 1995).

■ The court lacks jurisdiction to promote plaintiff. "The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." *Testan*, 424 U.S. at 402, 96 S.Ct. 948. "[D]ecisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments." *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). Hence, "the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002). A decision to promote an officer lies outside of the institutional competence of courts, and for that reason "courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so." *Id.*

■ Plaintiff himself does not dispute the merits of the FY00 selection board's decision not to promote him. *See* Compl. filed July 24, 2002, ¶ 22. To the contrary, plaintiff argues that he would not have been promoted if considered by a previous (FY98 or FY99) selection board. Plaintiff, instead, is making a procedural argument—that the delay of his promotion was a procedural violation that entitled him to relief, as distinguished from an argument that he was entitled to promotion.

Plaintiff predicates his claim for separation pay on two theories: (1) The Navy failed to follow its own statutes and regulations in delaying plaintiff's promotion; and (2) The Navy violated statutes and regulations when it removed plaintiff from the promotion list. But for these two violations, plaintiff argues, he would have received separation pay.

Separation pay is paid to regular officers who have "completed six or more, but less than twenty, years of active service." 10 U.S.C. § 1174(a)(1). Regular officers who twice fail to be selected for promotion to the next higher regular grade are involuntarily separated, unless they are within two years of retirement. *See* 10 U.S.C. § 632(a)(1–3).

When plaintiff failed to be promoted for the second time by the FY00 selection board,

plaintiff already had completed 18 years of creditable service. At that point plaintiff was not eligible for involuntary separation under 10 U.S.C. § 632(a)(1). Rather, 10 U.S.C. § 632(a)(3) directed the Navy to retain plaintiff on active duty until he reached 20 years of creditable service and retirement. Prior to reaching 20 years of service, plaintiff was convicted at a General Court–Martial. After his conviction plaintiff has not separated from the Navy and will not until his sentence expires, making him ineligible for separation pay.[2]

Accordingly, because plaintiff has not been separated from the Navy, no contract or money-mandating statute entitles him to separation pay before being separated. Plaintiff has not cited, nor is the court aware of, any regulation or statute that would allow plaintiff to collect separation pay while still retained by the Navy. The court therefore lacks jurisdiction over plaintiff's claims for promotion and separation pay.

## 2. *Merits of plaintiff's claims*

Because plaintiff has shown a resolve to press his claims by submitting many filings, the record will benefit from a full consideration of the merits. The review of an administrative record calls for a determination whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Martinez*, 333 F.3d at 1314.

Plaintiff attacks the action of the Navy in delaying and failing to promote him for numerous violations: (1) The promotion delay violated 10 U.S.C. § 624(d)(4) (2000), and SECNAVINST 1420.1A § 23(a)(5) (Jan. 8, 1991).(2) The promotion delay was arbitrary and capricious. (3) The promotion delay lacked proper authority. (4) The recommendation of removal from the FY97 promotion list was arbitrary and capricious. (5) Plaintiff's letter in response to removal from FY97 promotion list was not forwarded to the Secretary of the Navy. (6) Plaintiff should have been placed before the FY99 selection board.

(7) The FY00 selection board improperly considered plaintiff's altered fitness report.

### 1) *Whether the delay in promotion contravened statute or regulation*

■ An officer's promotion may be delayed if there is "cause to believe that the officer is mentally, physically, morally, or professionally unqualified." 10 U.S.C. § 624(d)(2); SECNAVINST 1420.1A § 23(a)(5). Plaintiff's promotion to commander was delayed by the Chief of Naval Personnel after plaintiff failed a physical readiness test and admitted to falsifying test results (a "significant event"), reasons encapsulated by § 624(d)(2).

An officer whose promotion is delayed must be informed of the grounds for the delay and given an opportunity to make a written statement to the Secretary of the Navy. *See id.* § 624(d)(3); 1420.1A § 23(c). Plaintiff was given such notice in a letter from the Chief of Naval Personnel dated May 19, 1997. In response to that letter, plaintiff submitted a written statement on June 2, 1997.

The Chief of Naval Personnel may delay a promotion for only six months, unless the Secretary of the Navy specifies an extended date. *See* 10 U.S.C. § 624(d)(4); SECNAVINST 1420.1A § 23(d). The Secretary of the Navy extended plaintiff's delay on December 8, 1997, until all "administrative action" was completed, on account of his having failed a physical readiness test and falsified test results.

Even after being extended by the Secretary of the Navy, a promotion may not be delayed over 90 days from any final action in a criminal court or court martial and, in any event, no longer than 18 months from the date of promotion. 10 U.S.C. § 624(d)(4). Although currently incarcerated, plaintiff never faced charges for failing and falsifying his physical readiness tests. Therefore, the 90–day limit is inapplicable, as neither a final action nor an underlying court action was involved. Plaintiff's delay in promotion is restricted solely by the 18–month limitation.

---

**2.** Plaintiff remains on active duty pending final appellate review of his criminal court martial. 10 U.S.C. § 871(c)(1). As an active duty officer,

plaintiff continues to be considered for promotion to commander-most recently failing to be selected by the FY04 selection board.

The promotion delay ended on March 19, 1998, when the Secretary of the Navy removed plaintiff from the FY97 promotion list. At just over nine months after plaintiff's promotion date, the promotion delay was well within the 18–month limitation. Thus, the delay of plaintiff's promotion complied with 10 U.S.C. § 624 and SECNAVINST 1420.1A § 23, a proper basis for the delay existed, plaintiff was given notice, and the delay was within the time limitation.

### 2) *Whether the delay in promotion was an abuse of discretion*

Plaintiff next contends that the Chief of Naval Personnel acted in an arbitrary and capricious manner in seeking an extension in the delay of his promotion. In the May 19, 1997 letter notifying plaintiff that his promotion was delayed, the Chief of Naval Personnel referenced the basis for the decision. The letter recited that the promotion was delayed because plaintiff failed physical readiness standards and because a significant event had occurred, *i.e.*, plaintiff's falsifying physical readiness test results and his performing unsatisfactorily when confronted with his falsifications. These reasons for delaying plaintiff's promotion, uncontested by plaintiff, are neither arbitrary nor capricious.

Plaintiff further takes issue with the timing of the delay in promotion. The Chief of Naval Personnel recommended that the Secretary of the Navy remove plaintiff from the FY97 promotion list on January 2, 1998. Plaintiff maintains that such a recommendation should have been made in May 1997. He was informed by letter that he may be removed from the promotion list on October 30, 1997, and was requested to make a written statement. Plaintiff responded by facsimile transmission on November 17, 1997.

The essence of plaintiff's complaint distills to the following: If the Secretary of the Navy had removed plaintiff from the promotion list prior to March 1998, plaintiff would have gone before the FY99 selection board which met in March 1998. Because he would have failed to be selected for promotion at a time when plaintiff had under 18 years of active duty, he would have been involuntarily separated and would have received separation pay.

■ "The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir.1995). Therefore, judicial review is limited to examining whether the statutory procedures were followed. *See Adkins*, 68 F.3d at 1323 ("[A] challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.").

Plaintiff was removed from the promotion list eight months after the effective promotion date and nine months after his promotion was delayed by the Chief of Naval Personnel. While not the most expeditious process, the delay and removal were within the time limitation set out in § 624(d)(4). Also, given plaintiff's failure of a physical test and falsification of test results, reasons were present to believe that plaintiff was "mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected." *See* 10 U.S.C. § 624(d)(2). The delay of plaintiff's promotion and removal from the promotion list thus complied with the procedures set out in both § 624 and 1420.1A 23. Plaintiff has not shown that the delay was arbitrary or capricious.

### 3) *Whether the Assistant Secretary of the Navy had authority to delay plaintiff's promotion*

The delay in plaintiff's promotion was signed by Assistant Secretary of the Navy for Manpower and Reserve Affairs Bernard Rostker. Plaintiff contends that only the Secretary of the Navy, and not the Assistant Secretary, has the power to delay promotions. The duty of the Assistant Secretary of the Navy for Manpower and Reserve Affairs is the supervision of manpower. 10 U.S.C. § 5016 (2000); 32 C.F.R. § 700.324 (2002). The Assistant Secretary of the Navy is a Civilian Executive Assistant, as defined by 32 C.F.R. § 700.310. As such, the Assistant Secretary is "authorized and directed to act for the Secretary within [his] area of responsibility." 32 C.F.R. § 700.320. The

Assistant Secretary of the Navy for Manpower and Reserve Affairs has the authority to act for the Secretary of the Navy in delaying promotions, a power within his area of responsibility.

### 4) *Whether plaintiff's removal from the promotion list complied with applicable regulations*

The Chief of Naval Personnel recommended that the Secretary of the Navy remove plaintiff from the FY97 commander promotion list by letter dated January 2, 1998. Plaintiff contends that this letter contains four errors: It does not mention the December 8, 1997 extension in the delay of plaintiff's promotion. It implies that plaintiff was not recommended for promotion. Letters from plaintiff were not sent to the Secretary of Navy. Finally, plaintiff was not aware of the letter until March 1998.

Although the January 2, 1998 letter does not reference the December 8, 1997 extension of the promotion delay by the Assistant Secretary, it does indicate that plaintiff's promotion was delayed. The failure to mention the December letter is not a violation of statute or regulation and was not improper.

Plaintiff's indictment of the letter as not noting his promotion recommendation is inconsistent with the facts. To the contrary, the January 2, 1998 letter states that "LCDR Loeh submitted his most recent fitness reports which recommended him for promotion." The letter further clarifies: "Commanding Officer ... endorsed LCDR Loeh's promotion to commander." No plausible inference can be drawn from the January 2, 1998 letter that plaintiff was not recommended for promotion.

Plaintiff correctly identifies an inconsistency in the record regarding his fitness reports. The April 6, 1997 fitness report shows plaintiff receiving a "progressing," not "promotable" rating. However, the January 2, 1998 letter gives no indication that the "progressing" April 9, 1997 fitness report was considered in removing plaintiff from the promotion list. Indeed, the record reflects that the "promotable" report was considered. Because plaintiff cannot show that the "pro-

gressing" report was used, he has failed to substantiate error.

Plaintiff's assertion that his letter and facsimile transmissions were not forwarded to the Secretary of the Navy for consideration also lacks a factual basis. The January 2, 1998 letter references both plaintiff's June 2, 1997 letter and his November 7, 1997 facsimile transmission. No indication is present that these documents were not sent to or considered by the Secretary of the Navy. Given that they are referenced in the January letter, which was signed by the Secretary of the Navy on March 13, 1998, in approving the removal of plaintiff, no violation of procedure has been established.

Plaintiff further argues that he did not receive a copy of the January 2, 1998 letter until after it was approved by the Secretary of the Navy on March 13, 1998. Plaintiff was not entitled to the letter before it was signed by the Secretary of the Navy, nor does plaintiff allege that he did not receive the letter shortly after it was approved. No cognizable allegation of statutory or regulatory wrongdoing can be drawn from these record facts.

### 5) *Whether failure to forward plaintiff's April 13, 1998 letter was erroneous*

Plaintiff sent a letter seeking reconsideration of the removal of his name from the promotion list addressed to the Secretary of the Navy, via the Chief of Naval Personnel. The Chief of Naval Personnel did not forward the letter to the Secretary of the Navy. Plaintiff claims a violation of SECNAVINST 5216.5D § 1–5(a) (Aug. 29, 1996), which states "via" addressees "may elect to take *final action*, divert the routing or return the correspondence." Plaintiff himself has cited to the applicable regulation, which discloses *no requirement* that the "via" addressee forward the letter. "Via" addressees are empowered to take final action and retain correspondence or forward it to whomever they deem appropriate. Thus, the Chief of Naval Personnel was empowered to act on the letter from plaintiff and was not required to forward the letter to the Secretary of the Navy.

### 6) *Whether plaintiff should have been considered by the FY99 selection board*

After being removed from the FY97 promotion list, plaintiff was considered by the FY00 selection board. Plaintiff contends that he should have been placed before the FY98 or FY99 selection board. 10 U.S.C. § 619(d)(1) prevents a selection board from considering "[a]n officer whose name is on a promotion list for that grade as a result of his selection ... by an earlier selection board." While the parties do not dispute that plaintiff was on the FY97 promotion list when the FY98 selection board met, plaintiff does contend that he was eligible for consideration by the FY99 selection board. The FY99 selection board met on March 9–24, 1998. Plaintiff was not removed from the FY97 promotion list until March 14, 1998. On the date the FY99 selection board convened, plaintiff was on the FY97 promotion list and not eligible for consideration by the FY99 selection board. The next selection board to meet was FY00, which did consider and failed to promote plaintiff.

### 7) *Whether the FY00 selection board considered the altered fitness report*

Because his service record contains an April 6, 1997 fitness report that had been altered to rate plaintiff as "progressing" rather than "promotable," plaintiff contends that the FY00 selection board considered this altered fitness report. The parties dispute whether the altered report was placed in plaintiff's record before or after the FY00 selection board. In the January 2, 1998 letter, the Chief of Naval Personnel refers to the fitness report that recommends plaintiff for promotion. However, resolution of this factual dispute would be unnecessary.

"[E]ven where a claimant establishes a clear violation of a specific objective requirement of a statute or regulation, or a misstatement of a significant hard fact, the claimant is not entitled to relief unless the claimant shows a 'nexus' between the error or injus-

tice and the subsequent decision not to promote the officer." *Lindsay v. United States,* 295 F.3d 1252, 1259 (Fed.Cir.2002). Had the selection board considered the altered report, "the possibility of erroneous records does not transform an otherwise nonjusticiable action into a reviewable one." *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993).

The Federal Circuit in *Murphy* reviewed the decision of a selection board that considered erroneous records and held that any "corrective action [the Court of Federal Claims] devised was the result of nothing more than speculation that the [selection board] decision would have been different." *Id.* Courts "lack[ ] the special expertise needed to review ... officers' records and rank them on the basis of relative merit." *Id.; see also Fluellen v. United States,* 225 F.3d 1298, 1304 (Fed.Cir.2000) (selection board's decision relying on later voided evaluation not judicially reviewable).[3]

Plaintiff has failed to show a "nexus" between the use of the altered fitness report and his failure to be selected for promotion to commander. He had been removed by the Secretary of the Navy from a previous promotion list, a fact not lightly considered by a subsequent selection board. Were plaintiff's case to be considered on the merits, it would be pure speculation on the part of this court, as well as an abuse of discretion, to substitute the court's judgment for that of the selection board. Although the use of the altered fitness report, if it did occur, may be a procedural error, plaintiff has not shown that it was the cause of his failing to be selected for promotion.

### CONCLUSION

Accordingly, based on the foregoing,

Defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

---

**3.** In the present case, it is even more doubtful that the altered fitness report, if considered, would have effected a different result. Plaintiff received the rating of "promotable" in the origi-

nal report, which is actually the mid-point of five possible ratings, far from a resounding endorsement of plaintiff.

IT IS SO ORDERED.

No costs.