NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2429
_____

JUNIUS L. BAUGH,

Appellant

v.

SECRETARY OF THE NAVY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-440)
District Judge:  Hon. Robert F. Kelly
_____

Argued on March 7, 2012

BEFORE:  McKEE, *Chief Judge*, and SCIRICA, AMBRO, *Circuit Judges*

(Opinion Filed: November 13, 2012)

David P. Sheldon (argued)
Law Offices of David P. Sheldon
512 8th Street SE
Washington, DC 20003
        *Counsel for Appellant*

Zane David Memeger
Margaret L. Hutchison
Richard Mentzinger, Jr.  (argued)
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

McKEE, *Chief Judge*.

Junius Baugh appeals from the district court's decision granting the Navy's motion for summary judgment and denying Baugh's cross-motion for summary judgment on his Administrative Procedure Act claim. For the reasons that follow, we will affirm.

**I.**

Inasmuch as we are writing primarily for the parties, who are familiar with the underlying factual and procedural history of this dispute, we will only briefly set forth the factual and legal background of this litigation.

In 1994, Baugh filed a petition with the Board for Correction of Naval Records ("BCNR" or the "Board") requesting removal of certain fitness reports in his file. A two-member majority of the Board found "an injustice warranting removal of the contested fitness reports." J.A. 35. The Board majority, therefore, recommended that the contested fitness reports be removed, but did "not consider it appropriate to authorize the ISIC [Immediate Senior/Superior in Command] to submit replacement fitness reports for the periods covered by the contested reports [because] . . . Petitioner did not specifically request this." J.A. 36. Because the decision was not unanimous, the Board forwarded the petition to then Assistant Secretary of the Navy for Manpower and Reserve Affairs, Bernard Rostker, pursuant to 32 C.F.R. § 723.6(e)(ii).

Thereafter, Rostker issued a memorandum stating that he concurred with the Board majority's decision. However, Rostker ordered

> that replacement fitness reports be made by the immediate senior in command (ISIC) for the reasons suggested by the Military Personnel Evaluations and Correspondence Division of the Bureau of Naval Personnel. While the Petitioner has not requested such a remedy, removal of the contested fitness reports would leave the Petitioner without any ratings for five years.

J.A. 25. Rostker directed as follows:

> Accordingly, two reports should be issued, one for the period 1 February 1993 to 31 January 1994, and the second for the period 1 February to 8 July 1994, by the appropriate ISIC. However, since the Board acts for a remedial purpose, the ISIC reports may not be filed in Petitioner's records if they are lower than the reports removed.

*Id.* After Assistant Secretary Rostker's directive, the Head Officer for Fitness Reports notified the Board, in a January 18, 1995 letter, that she had removed the fitness reports but was "unable to obtain substitute reports from the Immediate Superior in Command (ISIC)." J.A. 40. The ISIC, Rear Admiral Louise Wilmot (Ret.), never drafted replacement fitness reports because she had not met Baugh, and had no knowledge of his job performance. She therefore thought it impossible for her to file substitute fitness reports as contemplated by Rostker's directive. When personally contacted by the Navy, "[s]he stated that she had never met this officer, and therefore could not sign a fitness report for someone she did not know." J.A. 27. Instead, on December 30, 1994, a Fitness Memorandum was placed in Baugh's file to cover the period of the removed reports. J.A. 26. The Fitness Memorandum stated:

> This memorandum is being filed in lieu of a fitness report for the above period. The Judge Advocate General has confirmed the legality of this procedure. Subject report has been removed by order of the Secretary of the Navy in accordance with

provisions of Federal law and may not be made available to selection boards and reviewing authorities. Such boards and authorities may not conjecture or draw any inference as to the nature of the report. The overall performance of subject officer will be evaluated from the material presently available.

*Id.*

Although Baugh received a backdated promotion to Lieutenant Commander in May 1995, nearly four years later he sought replacement of the removed fitness reports. In a February 11, 1999 letter, Carolyn H. Becraft, the successor to Assistant Secretary Rostker, responded to Baugh's request. J.A. 24. Assistant Secretary Becraft "determined that replacement of the contested fitness reports is not practicable" because the ISIC "declined to submit replacement reports." *Id.*[1] Accordingly, Becraft approved the previous decision to include a Fitness Memorandum in Baugh's file in lieu of the replacement reports. *Id.*

This suit followed. Baugh alleges that the Navy's refusal to issue fitness reports to replace those purportedly tainted by discrimination and retaliation was arbitrary and capricious. He seeks reinstatement and retroactive promotions, arguing that the absence of replacement fitness reports prevented his promotion to Commander. As noted at the outset, the district court granted summary judgment in favor of the Navy and this appeal followed.[2]

---

[1] After a request for reconsideration by Baugh's counsel, the Office of the Chief of Naval Personnel drafted a response letter recommending that Becraft adhere to her earlier decision that replacement fitness reports were "not practicable" and that it was "impossible at this time to comply with Dr. Rostker's memorandum." J.A. 27. The record is unclear as to whether this letter was signed by Becraft and delivered to Baugh.

[2] The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**II.**

Our review of BCNR decisions is controlled by the Administrative Procedure Act, 5 U.S.C. §§ 701-706, which provides a right to judicial review for a "person suffering legal wrong because of agency action." 5 U.S.C. § 702. We must focus on the agency's decision making process, not the decision itself. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006). We may only set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[3] Generally, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Although the standard of review is deferential, the Navy must nevertheless demonstrate that it considered "'rational connections between the facts found and the choice made.'" *Id.* (citation omitted).

**III.**

Under 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." An order issued under 10 U.S.C. § 1552 is "final and conclusive on all officers of the United States." *Id.* § 1552(a)(4).

---

[3] "We exercise plenary review of a district court's order granting or denying summary judgment, applying the same standard as the district court . . . ." *Tri–M Grp., LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011). We will affirm only if "drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* The same standards and burdens apply on cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

Thus, Rostker's November 22, 1994 memorandum constituted a "final and conclusive" order binding all officers of the United States. In that memorandum, Assistant Secretary Rostker ordered the ISIC to take steps to correct Baugh's record "due to an appearance of reprisal for a previous petition to the Board." J.A. 25. The Navy argues that Rostker's memorandum was a conditional recommendation instead of a "final and conclusive" order. We disagree. The Assistant Secretary's order directed "that fitness reports be *made* by the immediate senior in command (ISIC)." *Id.* (emphasis added). The order contained no exceptions to its directive that ISIC Wilmot prepare fitness reports. Instead, Rostker issued an unqualified order that the five-year gap in Baugh's record required the preparation of replacement fitness reports (save that fitness reports were not to be filed "if they are lower than the reports removed").

However, even assuming that ISIC Wilmot's failure to prepare replacement fitness reports violated Rostker's final and conclusive order, we agree that Baugh is not entitled to relief because ISIC Wilmot's decision was, in effect, ratified by Becraft's decision to approve the insertion of a Fitness Memorandum in lieu of replacement reports.

**A.**

Where, as here, the BCNR's decision is not unanimous, final decision-making authority as to what relief is appropriate vests in the Secretary of the Navy. 32 C.F.R. § 723.6(e)(ii).[4] When Assistant Secretary Rostker issued his decision pursuant to the recommendation of the BCNR, it became "final and conclusive" within the meaning of

---

[4] The parties do not dispute that the Assistant Secretary may act on behalf of the Secretary. *See also Loeh v. United States*, 57 Fed. Cl. 743, 748-49 (Fed. Cl. 2003) (citing 32 C.F.R. § 700.320).

10 U.S.C. § 1552(a)(4). While we reject the Navy's contention that it had "inherent power to reconsider or modify [its] prior decisions," *see* Appellee's Br. 34, n. 11, we hold that, under the unique circumstances here, Assistant Secretary Becraft had authority under 32 C.F.R. § 723.9 to reconsider Rostker's order. That regulation states that, "[a]fter final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence *or other matter not previously considered by the Board*." 32 C.F.R. § 723.9 (emphasis added). We do not construe Baugh's December 1, 1998 letter as a request for reconsideration, as he was merely seeking compliance with Rostker's order. Rather, Baugh's letter prompted a review by Assistant Secretary Becraft that raised "matter[s] not previously considered by the Board." Specifically, Becraft's review disclosed that Baugh's ISIC, Wilmot, did not know Baugh and thus could not issue replacement reports in good faith. Rostker had specifically worded his November 22, 1994 order as follows: "I direct that replacement fitness reports be made *by the immediate senior in command* (ISIC) . . .". J.A. 25 (emphasis added). Rostker could have directed the reports to be made by the ISIC "or his or her designee," and thereby authorized the ISIC to designate someone familiar with Baugh's performance to file the report if the ISIC was not sufficiently familiar to comply with the order. However, Rostker's direct order left no room for such a substitution.

This is a "matter not previously considered by the Board" in its recommendation, or by Rostker when he ordered that "two reports should be issued . . . by the appropriate ISIC." *Id.* Thus, Assistant Secretary Becraft had authority under 32 C.F.R. § 723.9 to reconsider Assistant Secretary Rostker's order.

## B.

Given our very narrow scope of review under the APA, we need only consider whether Assistant Secretary Becraft's approval of the insertion of a Fitness Memorandum in lieu of the replacement reports ordered by Rostker, pursuant to 32 C.F.R. § 723.9, was arbitrary and capricious. We find here that Becraft considered "rational connections between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

After receiving Baugh's December 1, 1998 letter, Becraft conducted an independent review of Baugh's case. She was cognizant of her predecessor's order—directed to Baugh's ISIC and no one else—to issue replacement reports, and the limitation contained therein that replacement "'reports may not be filed in Baugh's records if they are lower than the reports removed.'" J.A. 24. Thus, given ISIC Wilmot's unfamiliarity with Baugh and his job performance, Becraft determined "that replacement of the contested fitness reports is not practicable." J.A. 24. In this context, we need not determine if ISIC Wilmot acted in error by failing to produce replacement fitness reports pursuant to Rostker's order. Rather, we need only determine if Assistant Secretary Becraft, upon reconsideration of the order, had the ultimate authority to review and adjust the relief that had been ordered for Baugh and whether Becraft acted arbitrarily in approving placement of a Fitness Memorandum in Baugh's file in lieu of replacement reports. We have no trouble concluding that Becraft's ultimate conclusions,

8

which were consistent with the recommendations of the BCNR majority, J.A. 36, were a reasoned exercise of her authority under applicable Navy regulations.[5]

## V.

Accordingly, we will affirm the order of the district court entering summary judgment in favor of the Navy.

---

[5] We need not reach Baugh's final argument that the Board violated its mandate to provide him with whole relief, as that argument has been waived. Moreover, given our discussion here, it is clear that the argument would fail.